

**Office of the New York State Attorney General**

**Letitia James
Attorney General**

July 3, 2025

**By ECF**
Honorable Mae A. D'Agostino
United States District Court
445 Broadway
Albany, New York 12207

Re:    *United States v. State of New York et al.*, No. 25-cv-744 (MAD) (PJE)

Judge D'Agostino:

This office represents defendants the State of New York, Attorney General Letitia James in her official capacity, and Governor Kathy Hochul in her official capacity in this action. I am writing pursuant to Section 2(A)(i) of the Court's Individual Rules to respectfully request a pre-motion conference for defendants' anticipated Fed. R. Civ. P. 12(b) motion to dismiss the complaint, or in the alternative, a briefing schedule for that motion, with the opening, opposition, and reply briefs due August 4, September 3, and September 17, respectively.

## Factual Background

On June 12, 2025, plaintiff commenced the instant suit seeking to enjoin provisions of New York's Protect Our Courts Act ("POCA") (Ch. 322, Laws of 2020), and Executive Orders 170 and 170.1 (9 N.Y.C.R.R. §§ 8.170, 8.170.1). Plaintiff alleges the challenged state laws and executive orders are preempted by federal law and violate the intergovernmental immunity doctrine.

In 2020, the Legislature enacted POCA to codify New York's well-established common law and supplement the State's preexisting statutory protections. As relevant here, POCA prohibits the civil arrest of parties, witnesses, and their families in or near New York courthouses in

Hon. Mae A. D'Agostino Page 2 of 4
July 3, 2025

connection with those individuals' attendance at court proceedings. *See* N.Y. Civil Rights Law § 28(1). Executive Order 170 generally prohibits state officials from inquiring about an individual's immigration status and disclosing information for the purpose of civil immigration enforcement unless required by law. 9 N.Y.C.R.R. § 8.170(B) (2017). And Executive Order 170.1 requires a judicial warrant or order to execute a civil immigration arrest in a state facility, except where the arrest is related to a proceeding occurring therein. *Id.* § 8.170.1(B) (2018).

Until recently, U.S. Immigration and Customs Enforcement ("ICE") policies expressly acknowledged and abided by state law protections and restrictions on civil arrests. For example, ICE specifically recognized that a civil immigration arrest may be carried out in or near a courthouse in certain cases only "where such action is not precluded by laws imposed by the jurisdiction in which the enforcement action will take place."[1] For good reason: ICE's prior policy (instituted in 2018 during the first Trump administration, and now resurrected here)—permitting civil immigration arrests in or near courthouses without regard to New York law—was previously found to be unlawful and was enjoined. *See State of New York v. United States Immigration & Customs Enforcement*, 466 F. Supp. 3d 439 (S.D.N.Y. 2020).[2]

**The Complaint Should Be Dismissed for Failing to State a Claim**

The only theory of preemption offered by plaintiff in this case is conflict preemption. However, it is presumed that Congress intends to incorporate and retain "long-established and

---

[1] *See* Memorandum from Caleb Vitello, Acting Director of ICE at 2 (Procedures) (Policy Number 11072.3), *available at* https://tinyurl.com/tcfsdt5a. On May 27, 2025, this policy was modified and the specific provision barring civil immigration arrests prohibited by state law was removed. *Compare* Memorandum from Todd M. Lyons, Acting Director of ICE at 2, dated May 27, 2025, *available at* https://tinyurl.com/389vfxsj *with* Vitello Memorandum at 2, *supra*.

[2] ICE appealed to the Second Circuit, but later rescinded the enjoined policy. Thereafter, upon the parties' request, the circuit dismissed ICE's appeal as "moot and/or waived," and directed the district court to vacate the judgment and dismiss the case. *See State of New York v. ICE*, No. 20-2622, 2023 WL 2333979 (2d Cir. Feb. 28, 2023).

Hon. Mae A. D'Agostino  Page 3 of 4
July 3, 2025

familiar [state common law] principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (cleaned up). Here, New York's common law protection against civil arrests in and around courthouses was well established when Congress enacted the federal immigration laws that are the basis of plaintiff's conflict preemption claim, and no provision of federal law evinces a clear intent to displace these longstanding protections. *See New York*, 466 F. Supp. 3d at 445-46.

Similarly, courts must interpret federal statutes "not to alter the usual constitutional balance between the States and the Federal Government unless the language of the statute is 'unmistakably clear' to that effect." *Id.* at 445 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)) (cleaned up). In this case, the laws prohibiting civil arrests in or around courthouses further New York's compelling interest in protecting the functioning of its judicial system. And the Executive Orders challenged here are valid exercises of the State's police powers in prescribing how state officials conduct their duties, and protecting the State's facilities used for state business from undue disruption. *See Adderley v. State of Fla.*, 385 U.S. 39, 47-78 (1966) (states entitled "to control the use of its own property"). No provision of federal law evinces the requisite "unmistakably clear" intent to displace state common law or intrude on New York's interests in managing its own affairs.

The state laws and orders challenged here also do not violate intergovernmental immunity because they do not regulate the conduct of federal officials or improperly discriminate against the federal government. The State's exercise of its sovereign rights to ensure the integrity of its court system and to restrict the use of state resources in assisting with civil immigration enforcement cannot be invalidated under conflict preemption or intergovernmental immunity principles without constituting an end-run around the Tenth Amendment. *See United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019); *McHenry County v. Raoul*, 44 F.4th 581, 594 (7th Cir. 2022).

Hon. Mae A. D'Agostino  Page 4 of 4
July 3, 2025

                                                    Respectfully submitted,

                                                    /s/ Linda Fang
                                                    LINDA FANG
                                                    Special Litigation Counsel
                                                    (212) 416-8580
                                                    Linda.Fang@ag.ny.gov