# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>State of New York et al.,<br><br>Defendant. | No. 25-cv-744 (MAD) (PJE)<br><br>Hon. Mae A. D'Agostino |

**BRIEF OF *AMICI CURAE* EIGHT FORMER NEW YORK JUDGES AND JUSTICES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE .......... 1
PRELIMINARY STATEMENT .......... 2
ARGUMENT .......... 4
I. ICE COURTHOUSE ENFORCEMENT DISRUPTS COURTHOUSES AND INTERFERES WITH THE ADMINISTRATION OF JUSTICE .......... 4
II. ICE COURTHOUSE ENFORCEMENT HAS A CHILLING EFFECT ON IMMIGRANT COMMUNITIES' ACCESS TO THE COURT SYSTEM .......... 8
CONCLUSION .......... 12
APPENDIX: LIST OF AMICI AND LOCAL CIVIL RULE 7.2(d) STATEMENT .......... 13

# TABLE OF AUTHORITIES

## Cases

*Cox v. Louisiana*,
379 U.S. 559 (1965) .......... 2

*Fry v. United States*,
421 U.S. 542 (1975) .......... 2

*New York v. U.S. Immigr. & Customs Enf't*,
431 F. Supp. 3d 377 (S.D.N.Y. 2019) .......... 2

*New York v. U.S. Immigr. & Customs Enf't*,
466 F. Supp. 3d 439 (S.D.N.Y. 2020) .......... 3

*Printz v. United States*,
521 U.S. 898 (1997) .......... 2

*United States v. Smith*,
426 F.3d 567, 576 (2d Cir. 2005) .......... 7

*Velazquez-Hernandez v. U.S. Immigr. & Customs Enf't,*
500 F. Supp. 3d 1132 (S.D. Cal. 2020) .......... 3

## Rules

Franklin Cnty. Ct., Gen. Div., R. 111 (2025) .......... 7

Wash. Ct. Gen. R. 38 (2025) .......... 7

## Other Authorities

Allison Sherry and Ben Markus, *Western Slope judge warns ICE to stop civil immigration actions in courthouses*, CPR News (Apr. 16, 2025) .......... 7

American Civil Liberties Union, Freezing Out Justice (2018) .......... 9

Angela Irvine et al., *The Chilling Effect of ICE Courthouse Arrests: How Immigration and Customs Enforcement Raids Deter Immigrants from Attending Child Welfare, Domestic Violence, Adult Criminal, and Youth Court Hearings, Ceres Policy Research* (Oct. 2019) .......... 9

Cora Engelbrecht, *Fewer Immigrants Are Reporting Domestic Abuse. Police Blame Fear of Deportation*, N.Y. Times (June 3, 2018) .......... 8

Dan Gooding, *ICE Detains Defendant in Middle of His Own Trial*, Newsweek (April 1, 2025) .......... 6

Edmund H. Mahony, *Marshal fired after standoff between activists and ICE agents at Derby courthouse*, Hartford Courant (Jan. 27, 2020) .......... 5

E-mail from Chief Criminal Judge Andrew R. Erwin to WSH-Judges, et al. (June 1, 2018) .......... 5

Holly Ramer, *A Venezuelan man was tackled in a New Hampshire courthouse and sent by ICE to Texas*, AP News (April 14, 2025) .......... 6

ICE Out of Courts Coalition, *Safeguarding the Integrity of Our Courts: The Impact of ICE Courthouse Operations in New York State* (2019) .......... 8, 9

Immigrant Defense Project, *Denied, Disappeared, and Deported: The Toll of ICE Operations at New York's Courts in 2019* (Jan. 2020) .......... 4

Immigrant Defense Project, *Section 4; Statements from Chief Judges, Governors, Prosecutors, Attorneys General, and Bar Associations* .......... 4

James Queally, Fearing Deportation, *Many Domestic Violence Victims Are Steering Clear of Police and Courts*, L.A. Times (Oct. 9, 2017) .......... 8

Judicial Branch of California, *Fear of Immigration Crackdown May Keep Court Users Away* (Mar. 30, 2017) .......... 5

Letter from Martha L. Walters, Chief Justice of the State of Oregon, to Bryan S. Wilcox, Acting Field Office Dir. for ICE Enf't & Removal Operations (June 17, 2019) .......... 5

Letter from Member of N.Y. State Assembly Patricia Fahy et al. to Sec'y of U.S. Dept. of Homeland Sec. Kristjan M. Nielsen (Feb. 5, 2019) .......... 10

Letter from public interest attorney to Chief Judge Rowan Wilson and Chief Administrative Judge Joseph A. Zayas (Jan. 13, 2025) .......... 10

Letter to Ronald D. Vitiello, Acting Dir. of U.S. Immigration. & Customs Nef'd (Dec. 12, 2018) .......... 3

Meghin Moore, Hannah Davis-Reid, *2 men detained at Albemarle courthouse in alleged ICE raid*, VPM (April 26, 2025) .......... 6

Memorandum from Sheila McNulty, Chief Immigration Judge, Operating Policies and Procedures Memorandum 23:01: Enforcement Actions in or Near OCIJ Space (Dec. 11, 2023) .......... 3

Memorandum from Tae Johnson, Acting Dir. of U.S. Immigration. & Customs Enf't & Troy Miller, Acting Comm'r of U.S. Customs & Border Prot., Civil Immigration Enforcement Actions in or near Courthouses (Apr. 27, 2021) ............................................................................ 3

Michael Casey, *Boston judge holds ICE agent in contempt after he detained suspect during a trial*, Associated Press (April 2, 2025)............................................................................... 6

N.M. Second Jud. Dist. Ct. Pol'y No. 2017-SJDC-010 (Nov. 9, 2017) ...................................... 6

Richard Gonzales, *No ICE Arrests in Courthouses Without Judicial Warrants, N.Y. Court Directive Says*, NPR (Apr. 17, 2019)........................................................................... 10

Rochelle Alleyne, *Lawyer in Columbus says ICE arrests have 'chilling effect' on Franklin County court proceedings*, 10TV (March 4, 2025)...................................................... 11

State of New York Unified Court System, Office of the Chief Administrative Judge, Directive No. 1-2019, Protocol Governing Activities in Courthouses by Law Enforcement Agencies (Apr. 17, 2019) ........................................................................................................... 1

Tyler Lane, *Chesterfield officials say ICE courthouse detainments are causing people to not show up for court*, CBS 6 News (July 18, 2025) ........................................................ 11

**INTERESTS OF AMICI CURIAE**

We are former New York State judges and justices who have dedicated our careers to safeguarding the rule of law and ensuring our courts are accessible to all. Our combined experience includes more than 180 years of service on the bench, including serving as the Chief Judge of the New York Court of Appeals; the Chief Administrative Judge of the New York State Unified Court System responsible for overseeing the day-to-day operation of the Statewide court system; Deputy Chief Administrative Judge for New York City Courts; Associate Judge of the New York Court of Appeals; Presiding Justice of the Appellate Division Second and Third Departments; and Administrative Judge for the New York Supreme Court Criminal Term, New York County. We respectfully submit this memorandum, as amici curiae (full list in the Appendix), in support of the Defendants' (collectively, "New York") motion to dismiss the Complaint.

As former judges and justices, we understand how enforcement actions by Immigration and Customs Enforcement ("ICE") agents are likely to affect the state's judges and the day-to-day operations of its courthouses. In fact, during the last Trump administration, some of us were involved in the decision to adopt Office of the Chief Administrative Judge Directive No. 1-2019, which, like the Protect Our Courts Act ("POCA") provisions at issue here, prohibited civil arrests inside New York State courthouses, except when executed pursuant to a judicial warrant or judicial order authorizing the arrest.[1] We write, based on our experience, to detail how civil courthouse arrests by ICE are inimical to the proper functioning of our courts.

---

[1] State of New York Unified Court System, Office of the Chief Administrative Judge, Directive No. 1-2019, Protocol Governing Activities in Courthouses by Law Enforcement Agencies (Apr. 17, 2019) (the "2019 Chief Administrative Judge Directive").

**PRELIMINARY STATEMENT**

"[U]nhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy." *Cox v. Louisiana*, 379 U.S. 559, 562 (1965). Moreover, under our system of dual sovereignty, "[t]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). The Tenth Amendment forbids the federal government from "impress[ing] into its service – and at no cost to itself" state resources, *id.* at 922, and from "exercis[ing] power in a fashion that impairs the States'. . . ability to function effectively in a federal system." *Fry v. United States*, 421 U.S. 542, 547 n.7 (1975).

Federal civil immigration enforcement actions at state courthouses, however, violate these foundational principles by placing burdens on court staff and facilities while causing disruptions that undermine those courts' ability to function properly. "Courts cannot be expected to function properly if third parties (not least the executive branch of the government) feel free to disrupt the proceedings and intimidate the parties and witnesses by staging arrests for unrelated civil violations in the courthouse, on court property, or while the witnesses or parties are in transit to or from their court proceedings." *New York v. U.S. Immigr. & Customs Enf't*, 431 F. Supp. 3d 377, 380 (S.D.N.Y. 2019) ("*New York I*").

This brief focuses on two of the multiple deleterious impacts to our judicial system and the rule of law should the federal government prevail in this case.

First, the invalidation of POCA would substantially interfere with judges' ability to maintain the order and safety necessary to effectively administer the justice system. When ICE began engaging in civil enforcement actions at state courthouses during the first Trump administration, judges across the country, including in New York, warned federal officials that

such warrantless civil arrests were disrupting court proceedings, burdening court staff with requests to facilitate such arrests, and leading to physical altercations involving court employees.[2] Judges overseeing litigation over courthouse arrests found that ICE's courthouse arrests undermined the orderly functioning of courts. *See e.g.*, *New York v. U.S. Immigr. & Customs Enf't*, 466 F. Supp. 3d 439, 443–44 (S.D.N.Y. 2020) ("*New York II*"), *vacated on other grounds* 2023 WL 2333979 (2d Cir. Feb. 28, 2023); *Velazquez-Hernandez v. U.S. Immigr. & Customs Enf't,* 500 F. Supp. 3d 1132, 1145–46 (S.D. Cal. 2020).

Second, allowing ICE to make warrantless courthouse civil arrests would have a chilling effect on immigrant communities' access to the justice system and, as a result, courts' ability to serve their communities. As both ICE and the Department of Justice's ("DOJ") Executive Office for Immigration Review previously acknowledged, the policies at issue in this case disincentivized immigrant communities from accessing court systems.[3] In prior litigation between the parties in which New York sought to enjoin ICE from enforcing a similar policy, the Southern District of New York found that, *inter alia*, "substantial numbers of non-citizen litigants," even those who were not subject to arrest, "feared any kind of participation in the legal system, including reporting domestic violence, litigating family court actions, and pursuing meritorious defenses to criminal charges." *New York II*, 466 F. Supp. at 443 (citations to exhibits omitted). As several state chief

---

[2] Letter to Ronald D. Vitiello, Acting Dir. of U.S. Immigr. & Customs Enf't (Dec. 12, 2018), https://www.scribd.com/document/395488473/Letter-From-Former-Judges-Courthouse-Immigration-Arrests#fullscreen&from_embed ("Former Judges' Letter").

[3] Memorandum from Sheila McNulty, Chief Immigration Judge, *Operating Policies and Procedures Memorandum 23:01: Enforcement Actions in or Near OCIJ Space* (Dec. 11, 2023), https://www.justice.gov/d9/2023-12/oppm_re_dhs_enforcement_actions_in_or_near_ocij_space_-_12.11.2023.pdf ("McNulty Memorandum"); Memorandum from Tae Johnson, Acting Dir. of U.S. Immigr. & Customs Enf't & Troy Miller, Acting Comm'r of U.S. Customs & Border Prot., *Civil Immigration Enforcement Actions in or near Courthouses* (Apr. 27, 2021), https://www.cbp.gov/sites/default/files/assets/documents/2021-Apr/Enforcement-Actions-in-Courthouses-04-26-21.pdf.

justices noted at that time, such a climate of fear deters litigants, witnesses, and interested parties alike from attending court, undermining the core mission of our state judiciaries.[4] Accordingly, absent POCA's protections, many immigrant litigants and witnesses—even those lawfully in the United States—would avoid state courthouses altogether, harming the individuals who have lost opportunities to seek justice and forcing judges to resolve matters without the participation of vital parties.

For these reasons and others, we support New York's motion to dismiss the Complaint.

## ARGUMENT

### I. ICE COURTHOUSE ENFORCEMENT DISRUPTS COURTHOUSES AND INTERFERES WITH THE ADMINISTRATION OF JUSTICE

Civil immigration enforcement in and around state courthouses interferes with the effective administration of justice by disrupting proceedings, distracting court officials, and diverting critical judicial resources from state judiciaries to federal immigration enforcement.

Under the prior Trump Administration, ICE targeted and apprehended individuals appearing in criminal, housing, family, civil, or other non-immigration courts, leading to confusion and physical altercations involving court employees.[5] In New York, ICE agents were observed breaking courthouse doors, slamming individuals to the ground and against courthouse walls and fences, and arresting them without explanation.[6] As explained by former Oregon Chief Justice Martha Walters when reflecting on courthouse arrests in Oregon, the agents making these arrests

---

[4] Immigrant Defense Project, *Section 4; Statements from Chief Judges, Governors, Prosecutors, Attorneys General, and Bar Associations*, https://www.immigrantdefenseproject.org/wp-content/uploads/CourthouseToolkitSection4.pdf ("IDP Section 4").

[5] Letter to Chief Judge Wilson, *infra* note 28, at 1; Former Judges' Letter, *supra* note 2, at 2.

[6] Immigrant Defense Project, *Denied, Disappeared, and Deported: The Toll of ICE Operations at New York's Courts in 2019*, at 12 (Jan. 2020), https://www.immigrantdefenseproject.org/wp-content/uploads/Denied-Disappeared-Deported-FINAL.pdf ("IDP Report").

were often in plain clothes, at times declining to identify themselves, leading to "confusion" and "public alarm."[7]

In many instances, the significant disruption resulting from such warrantless civil arrests "forced courts to adjourn proceedings at the last minute, wasting scarce judicial time and resources." *New York II*, 466 F. Supp. 3d at 444 (citations omitted). For example, in 2020, ICE officers and immigration advocates engaged in a day-long standoff in a Connecticut Superior Court over the detention of an individual, halting court proceedings.[8] In a climate of ad hoc courthouse arrests, even a rumored immigration raid can lead individuals to flee courthouses, leaving judges unable to discharge their duties.[9]

Warrantless courthouse civil arrests also divert court resources by prompting needless warrants and default judgments when individuals fail to appear, distracting court officials from their duties or pressuring such officials to facilitate courthouse arrests.[10] For example, during the first Trump administration, a Chief Criminal Judge in Oregon described how an attempted courthouse arrest outside of his courtroom, and an ensuing "melee," put his court-security deputy in a "clear Hobson's dilemma."[11] As described by the chief judge, the deputy had to "decide

---

[7] Letter from Martha L. Walters, Chief Justice of the State of Oregon, to Bryan S. Wilcox, Acting Field Office Dir. for ICE Enf't & Removal Operations, at 2 (June 17, 2019), https://innovationlawlab.org/wp-content/uploads/2019/07/ICE-Letter-to-Wilcox.pdf.

[8] Edmund H. Mahony, *Marshal fired after standoff between activists and ICE agents at Derby courthouse*, Hartford Courant (Jan. 27, 2020), https://www.courant.com/2020/01/27/marshal-fired-after-standoff-between-activists-and-ice-agents-at-derby-courthouse/.

[9] Judicial Branch of California, Fear of Immigration Crackdown May Keep Court Users Away (Mar. 30, 2017), https://web.archive.org/web/20201020075232/https://newsroom.courts.ca.gov/news/fear-immigration-crackdown-may-keep-court-users-away.

[10] Letter to Chief Judge Wilson, *infra* note 28, at 2–3.

[11] E-mail from Chief Criminal Judge Andrew R. Erwin to WSH-Judges, et al. (June 1, 2018), https://www.brennancenter.org/sites/default/files/2020-05/Ryan%20et%20al_Erwin%20email%206.1.18.pdf

whether to confront the present violence and unknown danger, thereby abandoning the in-custody defendants, or stay at his post and accept the consequences [of] the violence being wrought."[12] Needless to say, such an environment makes it difficult for judges to do their jobs.

There already are numerous examples of the disruption caused by the re-implementation of ICE's policies encouraging courthouse arrests during the current Trump Administration. For example, in Massachusetts, ICE arrested a criminal defendant as he was leaving court on the first day of his trial, leading to the judge holding an ICE agent in contempt for allegedly obstructing justice.[13] The District Attorney's office noted that ICE's actions had "interfered with [their] efforts to hold [the defendant] accountable" for his alleged crimes.[14] At a Virginia courthouse, individuals were detained by plainclothes ICE agents who did not fully identify themselves, causing widespread confusion and leading to protests.[15] And in New Hampshire, as ICE agents were apprehending an individual facing misdemeanor charges, agents knocked over an elderly bystander who was using a cane.[16]

The courthouse safety risks created by these warrantless civil arrests were predictable. As the then-Chief Immigration Judge stated in a memorandum issued by DOJ's Executive Office for

---

[12] *Id.*

[13] Dan Gooding, *ICE Detains Defendant in Middle of His Own Trial*, Newsweek (April 1, 2025), https://www.newsweek.com/ice-agents-arrest-immigrant-mid-trial-boston-2053276.

[14] Michael Casey, *Boston judge holds ICE agent in contempt after he detained suspect during a trial*, Associated Press (April 2, 2025), https://www.wbur.org/news/2025/04/02/judge-ice-agent-contempt-suspect-detained-trial.

[15] Meghin Moore, Hannah Davis-Reid, *2 men detained at Albemarle courthouse in alleged ICE raid*, VPM (April 26, 2025), https://www.vpm.org/news/2025-04-23/albemarle-courthouse-ice-raid-nicholas-reppucci-teodoro-dominguez-rodriguez.

[16] Holly Ramer, *A Venezuelan man was tackled in a New Hampshire courthouse and sent by ICE to Texas*, AP News (April 14, 2025), https://apnews.com/article/immigrant-ice-arrest-court-c81b0c7b5b50767072fc35bebce8a373.

Immigration Review in 2023 about the arrests of persons appearing in federal immigration courts, such arrests "may create safety risks for those who may be present during such enforcement actions, including children and adults appearing for hearings . . . employees, and other building or facilities personnel."[17] Because of the need to carefully balance the rights of parties and the public with the security and order that courts need to function properly, "the Supreme Court has made clear that courtroom and courthouse premises are subject to the control of the court." *United States v. Smith*, 426 F.3d 567, 576 (2d Cir. 2005) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966)) (internal quotation marks omitted).

As former judges and justices, we know how crucial an orderly and safe courthouse is to the proper administration of justice. Indeed, many of our judicial colleagues across the country, having seen the disruption caused by courthouse immigration arrests, saw fit to adopt policies similar to POCA prohibiting or limiting courthouse arrests without a judicial warrant.[18] POCA was passed with the specific purpose of stopping the violence, confusion, and chaos caused by civil immigration arrests at courthouses, and its invalidation would lead to the disruption that we saw in New York prior to its passage and that we are currently seeing in state courthouses throughout the country.

---

[17] McNulty Memorandum, *supra* note 3, at 2.

[18] *See* Franklin Cnty. Ct., Gen. Div., R. 111 (2025), https://www.fccourts.org/DocumentCenter/View/1304/Local-Rule-111-Prohibiting-Warrantless-Civil-Arrests; Seattle Mun. Ct. Pol'y & Proc. MCS-720-6.10 (Apr. 7, 2017), https://www.seattle.gov/documents/Departments/Court/ImmigrationPolicy2017.pdf; Wash. Ct. Gen. R. 38 (2025), https://www.courts.wa.gov/courtrules/gr.cfm?Rule=Open%20Access%20to%20Courts&fileName=GA_GR_38_00_00.pdf&link=https://www.courts.wa.gov/court_rules/pdf/GR/GA_GR_38_00_00.pdf; N.M. Second Jud. Dist. Ct. Pol'y No. 2017-SJDC-010 (Nov. 9, 2017), https://seconddistrict.nmcourts.gov/wp-content/uploads/sites/21/2023/11/SJDCCourthouseAccessPolicy20171120.pdf; Allison Sherry and Ben Markus, *Western Slope judge warns ICE to stop civil immigration actions in courthouses*, CPR News (Apr. 16, 2025), https://www.cpr.org/2025/04/16/colorado-judge-orders-ice-stop-enforcement-western-slope-courthouses/.

## II. ICE COURTHOUSE ENFORCEMENT HAS A CHILLING EFFECT ON IMMIGRANT COMMUNITIES' ACCESS TO THE COURT SYSTEM

To properly function, courts must be places where individuals from all backgrounds and statuses can safely access the justice system. Without this sense of safety, some members of the public will be reluctant to access courts. In turn, courts will be unable to provide the protection and services on which individuals depend, and courts' promise of equal justice under the law will remain unfulfilled. In granting New York's motion for summary judgment on its prior claims that ICE's policies encouraging warrantless courthouse civil arrests exceeded ICE's authority, the Southern District of New York found that there was "substantial evidence" that these arrests deterred some individuals from accessing courts. *New York II*, 466 F. Supp. 3d at 443; *see also id.* ("Evidence proffered by [New York] indicates that substantial numbers of non-citizen litigants, even those who were not themselves subject to these actions, now feared any kind of participation in the legal system[.]").

Consistent with the Southern District of New York's finding, numerous metrics indicate that civil immigration arrests at courthouses have led members of immigrant communities to avoid state courts altogether. For example, court systems and law enforcement agencies reported declines in domestic violence reports and requests for protective orders among immigrant communities.[19] Prior to POCA's passage, New York's court system also reported a decline in participation in

---

[19] *See, e.g.*, James Queally, *Fearing Deportation, Many Domestic Violence Victims Are Steering Clear of Police and Courts*, L.A. Times (Oct. 9, 2017), http://www.latimes.com/local/lanow/la-me-ln-undocumented-crime-reporting-20171009-story.html; Cora Engelbrecht, *Fewer Immigrants Are Reporting Domestic Abuse. Police Blame Fear of Deportation.*, N.Y. Times (June 3, 2018), https://www.nytimes.com/2018/06/03/us/immigrants-houston-domestic-violence.html; ICE Out of Courts Coalition, *Safeguarding the Integrity of Our Courts: The Impact of ICE Courthouse Operations in New York State* 22 (2019) ("Safeguarding Report"), https://www.immigrantdefenseproject.org/wp-content/uploads/Safeguarding-the-Integrity-of-Our-Courts-Final-Report.pdf (analyzing data from the New York State Unified Court System showing a general decline in the issuance of orders of protection against intimate partners and family members at the same time ICE increased its presence in New York courthouses).

problem-solving courts, with 10 percent fewer foreign-born clients seeking assistance in the state's Family Justice Centers in 2017 as compared to 2016.[20]

In addition, a 2019 survey revealed that 60 percent of respondents, who were people in mixed immigration status families and that included immigrants lawfully in the United States, avoided attending court when they had been a victim of a crime.[21] A 2017 survey of judges about the impact of ICE's presence at courthouses found that fifty-four percent of respondents reported case interruptions due to an immigrant crime survivor's fear of coming to court.[22] Statistics like these prompted judicial leaders beyond New York, including the chief justices in California, Connecticut, New Jersey, Oregon, Rhode Island, and Washington, to warn federal officials that courthouse arrests were deterring immigrant communities from attending court, undermining public confidence in courts.[23]

The chilling effect in New York was so severe that district attorneys across the state publicly expressed their concern about how ICE courthouse enforcement had discouraged noncitizen crime victims from reporting crimes, resulting in serious public safety issues.[24] New York state elected officials similarly expressed that ICE courthouse enforcement in New York "threaten[ed] to sow distrust in the relationship among our constituents and state and local law

[20] Safeguarding Report, *supra* note 19, at 23.

[21] Angela Irvine et al., *The Chilling Effect of ICE Courthouse Arrests: How Immigration and Customs Enforcement Raids Deter Immigrants from Attending Child Welfare, Domestic Violence, Adult Criminal, and Youth Court Hearings*, Ceres Policy Research, 2 (Oct. 2019), Executive Summary available at https://www.immigrantdefenseproject.org/wp-content/uploads/ice.report .exec_ summ.5nov2019.pdf.

[22] American Civil Liberties Union, Freezing Out Justice 2 (2018), https://www.aclu.org/report/freezing-out-justice.

[23] IDP Section 4, *supra* note 4.

[24] Safeguarding Report, *supra* note 19, at 7–8.

enforcement."[25] All of this prompted New York courts to adopt the directive prohibiting courthouse arrests absent a judicial warrant or order.[26] As one of us noted at the time, "[j]udges can't do their jobs unless people come to court."[27]

Likewise, shortly before President Trump took office in 2025, public and private attorneys that collectively represented hundreds of thousands of people with cases in the courts throughout New York wrote a letter to New York Chief Judge Rowan Wilson and New York Chief Administrative Judge Joseph A. Zayas requesting that they take clear, affirmative steps to assure that New York courts are operating in compliance with POCA.[28] In discussing the impact that ICE's courthouse arrest policy had on New York residents during the first Trump administration prior to POCA, these attorneys stated:

> More invisible but equally as disturbing is that many litigants fearing ICE apprehension at the courthouse forwent the legal process altogether. Parents stopped attending Family Court proceedings and lost custody of their children. People stopped coming to criminal courts and warrants were issued. Others did not defend against evictions. Prosecutors faced witnesses refusing to testify. Impacted people chose to take a plea bargain or accept a settlement that was not fair.[29]

In the approximately six months since the second Trump administration reimplemented a policy promoting mass courthouse arrests, attorneys, court officials, and local law enforcement are

---

[25] Letter from Member of N.Y. State Assembly Patricia Fahy et al. to Sec'y of U.S. Dept. of Homeland Sec. Kristjen M. Nielsen (Feb. 5, 2019), https://www.scribd.com/document/399491138/DHS-Secretary-NielsenLetter.

[26] 2019 Chief Administrative Judge Directive, *supra* note 1.

[27] Richard Gonzales, No ICE Arrests in Courthouses Without Judicial Warrants, N.Y. Court Directive Says, NPR (Apr. 17, 2019), https://www.npr.org/2019/04/17/714496186/new-york-courts-tell-ice-not-to-arrest-immigrants-in-courthouses-without-warrant.

[28] Letter from public interest attorney to Chief Judge Rowan Wilson and Chief Administrative Judge Joseph A. Zayas (Jan. 13, 2025), https://www.nylpi.org/wp-content/uploads/2025/01/Sign-On-Letter-to-OCA-re.ICE-1.13.25.pdf ("Letter to Chief Judge Wilson").

[29] *Id.* at 3.

already observing a similar impact on immigrant communities. In Chesterfield County, Virginia, for example, both the clerk and the sheriff report an "evident" chilling effect deterring people from appearing in court since ICE detained fifteen people over a four-day period in June, most of whom were in court to resolve traffic violations.[30] An Ohio attorney observed the same chilling effect in Columbus courts.[31]

The need for POCA has never been more clear: if POCA is invalidated, there will again be "an immediate chilling effect on immigrants' willingness to attend court proceedings" in New York.[32] As former judges and justices, we believe that safeguards such as POCA are imperative to ensure that immigrant communities continue to have access to courts and our system of justice.

---

[30] *See, e.g.*, Tyler Lane, *Chesterfield officials say ICE courthouse detainments are causing people to not show up for court*, CBS 6 News (July 18, 2025), https://www.wtvr.com/news/local-news/chesterfield-ice-detainments-officials-respond-july-18-2025.

[31] Rochelle Alleyne, *Lawyer in Columbus says ICE arrests have 'chilling effect' on Franklin County court proceedings*, 10TV (March 4, 2025), https://www.10tv.com/article/news/local/lawyer-on-franklin-county-court-ice-arrests/530-7c652e99-8720-4da9-bd29-2c23fcc80ba8.

[32] Letter to Chief Judge Wilson, *supra* note 28, at 3.

## CONCLUSION

For the foregoing reasons, New York's motion to dismiss should be granted.

Dated: New York, New York
August 11, 2025

By: /s/ Kenneth E. Lee

**LEVINE LEE LLP**
Kenneth E. Lee (NDNY Bar No. 706634)
Scott B. Klugman (NDNY Bar No. 706629)
Julia R. Timerman (NDNY Bar No. 706630)
400 Madison Ave
New York, New York 10017
Telephone: (212) 223-4400
klee@levinelee.com
sklugman@levinelee.com
jtimerman@levinelee.com

**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**
Douglas E. Keith
Michael A. Milov-Cordoba
120 Broadway, 17th Floor
New York, New York 10271
Telephone: (646) 292-8310
keithd@brennan.law.nyu.edu
milov-cordobam@brennan.law.nyu

*Attorneys for Amici Curiae*

**APPENDIX: LIST OF AMICI AND LOCAL CIVIL RULE 7.2(d) STATEMENT**

Hon. Janet DiFiore, Chief Judge of the New York Court of Appeals and of the State of New York (Ret.)

Hon. Lawrence K. Marks, Chief Administrative Judge of the New York State Unified Court System (Ret.)

Hon. Albert M. Rosenblatt, Associate Judge of the New York Court of Appeals (Ret.)

Hon. Leslie E. Stein, Associate Judge of the New York Court of Appeals (Ret.)

Hon. Karen K. Peters, Presiding Justice of the New York Supreme Court Appellate Division, Third Judicial Department (Ret.)

Hon. Alan D. Scheinkman, Presiding Justice of the New York Supreme Court Appellate Division, Second Judicial Department (Ret.)

Hon. Fern A. Fisher, Deputy Chief Administrative Judge for New York City Courts (Ret.)

Hon. Michael J. Obus, Administrative Judge for the New York Supreme Court Criminal Term, New York County (Ret.)

This brief was principally authored by Amici, along with counsel for Amici, Levine Lee LLP and The Brennan Center for Justice at NYU School of Law. No party's counsel authored this brief in whole or in part. No party nor any party's counsel contributed money related to the preparation or submission of this brief. No person other than Amici, their members and their counsel contributed money related to the preparation or submission of this brief.