IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

STATE OF NEW YORK; KATHLEEN
HOCHUL, Governor of New York, *in her
Official Capacity*; LETITIA A. JAMES,
Attorney General of New York, *in her Official
Capacity*,

*Defendants.*

Civil Action No.
1:25-CV-00744-MAD-PJE

**MOTION ON CONSENT OF NEW YORK DISTRICT ATTORNEYS FOR LEAVE TO
FILE AN AMICUS BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT**

Pursuant to Local Rule 7.2(b), New York District Attorneys ("Proposed Amici") respectfully move for leave to file a brief as amicus curiae in the above-captioned action in support of Defendants' motion to dismiss (Dkt. No. 11). The proposed amicus brief as well as a proposed order, per the Court's Local Rule 7.2(b), are attached as **Exhibits A and B**, respectively. Both parties consent to the motion.

This court has broad discretion to accept the filing of an amicus brief when the brief offers timely and useful information to the court. *Hart v. Town of Guilderland*, No. 20-CV-475, 2020 WL 8411581, at *1 (N.D.N.Y. July 28, 2020). "An amicus brief should normally be allowed . . . when the amicus has unique information or perspective that can help the court . . . ." *Pratt v. Indian River Cent. Sch. Dist.*, No. 09-CV-0411, 2010 WL 11681606, at *3 (N.D.N.Y. Dec. 6, 2010) (quotation marks omitted). Briefs from state and local officials, providing their unique insights and experiences with state law, are often especially useful to courts. *See Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544, 547 (2d Cir. 2015) (summary order) (encouraging district courts to *invite* state and local officials to file amicus briefs as a "good practice that will facilitate informed decisions.").

Proposed Amici's brief is timely under Local Rule 7.2(c): Defendants filed a motion to dismiss on August 4, 2025, meaning that this brief is filed within 7 days of the filing of the principal brief of the party being supported. *See also* Fed. R. App. P. 29(a)(6). The filing of the brief will thus not "result in unnecessary delays in the litigation." *Hart*, 2020 WL 8411581, at *1.

Proposed Amici's brief will also be useful to the court in adjudicating Defendants' motion to dismiss. Proposed Amici are elected district attorneys, representing communities statewide. The Protect Our Courts Act (the "Act"), was passed based on the experiences and endorsements of district attorneys from across the state, including several of the present amici.

Finally, both Plaintiff and Defendants consent to the proposed filing.

## CONCLUSION

For the foregoing reasons, Proposed Amici respectfully request that the Court grant them leave to participate as amici curiae in support of Defendants' motion to dismiss the Complaint.

Respectfully submitted,

ERIC GONZALEZ
District Attorney
Kings County

ALVIN L. BRAGG, JR.
District Attorney
New York County

By: s/ *David L. Gagne*

JILL HARRIS
  *Chief, Policy and Strategy*
DAVID SATNARINE
  *Executive ADA for Immigrant Affairs*
    *Of Counsel*

DAVID GAGNE
  *Assistant District Attorney*
STEVEN C. WU
  *Chief, Appeals Division*
CECELIA CHANG
  *Counsel, Appeals Division*
    *Of Counsel*

August 11, 2025

LEE C. KINDLON
  *District Attorney*
  *Albany County*
6 Lodge St.
Albany, NY 12207

DARCEL D. CLARK
  *District Attorney*
  *Bronx County*
198 E. 161st St.
Bronx, NY 10451

F. PAUL BATTISTI
  *District Attorney*
  *Broome County*
45 Hawley St.
Binghamton, NY 13902

MICHAEL D. FERRARESE
  *District Attorney*
  *Chenango County*
26 Conkey Ave.
Norwich, NY 13815

CHRIS LIBERATI-CONANT
  *District Attorney*
  *Columbia County*
325 Columbia St.
Hudson, NY 12534

KRISTYNA S. MILLS
  *District Attorney*
  *Jefferson County*
175 Arsenal St.
Watertown, NY 13601

ROBERT A. MASCARI
  *Acting District Attorney*
  *Madison County*
138 N. Court St.
Wampsville, NY 13163

WILLIAM J. FITZPATRICK
  *District Attorney*
  *Onondaga County*
505 S. State St.
Syracuse, NY 13202

JAMES B. RITTS
  *District Attorney*
  *Ontario County*
20 Ontario St.
Canandaigua, NY 14424

JOHN M. MUEHL
  *District Attorney*
  *Otsego County*
197 Main St.
Cooperstown, NY 13326

MELINDA KATZ
  *District Attorney*
  *Queens County*
125-01 Queens Blvd.
Kew Gardens, NY 11415

MICHAEL E. MCMAHON
  *District Attorney*
  *Richmond County*
130 Stuyvesant Pl.
Staten Island, NY 10301

ROBERT M. CARNEY
  *District Attorney*
  *Schenectady County*
612 State St.
Schenectady, NY 12305

JOSEPH G. FAZZARY
  *District Attorney*
  *Schuyler County*
105 Ninth St.
Watkins Glen, NY 14891

MATTHEW VAN HOUTEN
   *District Attorney*
   *Tompkins County*
320 N. Tioga St.
Ithaca, NY 14850

J. ANTHONY JORDAN
   *District Attorney*
   *Washington County*
383 Upper Broadway
Fort Edward, NY 12828

CHRISTINE K. CALLANAN
   *District Attorney*
   *Wayne County*
30 Church St.
Lyons, NY 14489

SUSAN CACACE
   *District Attorney*
   *Westchester County*
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2025, I electronically filed the foregoing Notice of Appearance with the Clerk of the Court of the United States District Court for the Northern District of New York by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

s/ *David L. Gagne*
David L. Gagne

Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                       *Plaintiff*,

    v.

STATE OF NEW YORK; KATHLEEN
HOCHUL, Governor of New York, *in her
Official Capacity*; LETITIA A. JAMES,
Attorney General of New York, *in her Official
Capacity*,

                       *Defendants*.

Civil Action No.
1:25-CV-00744-MAD-PJE

## PROPOSED AMICUS BRIEF OF NEW YORK DISTRICT ATTORNEYS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

ERIC GONZALEZ
District Attorney
Kings County

JILL HARRIS
   *Chief, Policy and Strategy*
DAVID SATNARINE
   *Executive ADA for Immigrant Affairs*
     *Of Counsel*

ALVIN L. BRAGG, JR.
District Attorney
New York County

STEVEN C. WU
   *Chief, Appeals Division*
CECELIA CHANG
   *Counsel, Appeals Division*
DAVID GAGNE*
   *Assistant District Attorney*
    *Counsel of Record*

August 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTEREST OF AMICI CURIAE ........................................................................ 1

ARGUMENT ........................................................................................................ 2

    WARRANTLESS CIVIL ARRESTS IN COURTHOUSES OBSTRUCT CRIMINAL PROSECUTIONS AND UNDERMINE PUBLIC SAFETY ........................................................................................ 2

        A.    Warrantless Civil Arrests in State Criminal Courthouses Chill Victim and Witness Cooperation ........................................... 3

        B.    Warrantless Civil Arrests in State Courthouses Help Defendants Evade Accountability and Frustrate Amici's Ability to Prosecute Crimes ................................................. 6

        C.    Warrantless Civil Courthouse Arrests Impair the Constitutional and Statutory Rights of Victims and Witnesses Afforded by Federal and State Law ................................... 9

        D.    Courthouse Arrests Make Immigrant Populations Particularly Vulnerable to Crime and Create a Chilling Effect in Immigrant Communities ................................................... 10

CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Doe v. U.S. Immigration and Customs Enf't*,
490 F. Supp. 3d 672 (S.D.N.Y. 2020) ............................................................. 2

*Fritz v. Young*, No. 2:11-CV-1766,
2012 WL 730099 (W.D. La. Jan. 30, 2012)..................................................... 8

*Globe Newspaper Co. v. Superior Court for Norfolk County*,
457 U.S. 596 (1982)......................................................................................... 9

*New York v. U.S. Immigration and Customs Enf't*,
431 F. Supp. 3d 377 (S.D.N.Y. 2019) ............................................................ 2

*New York v. United States Immigration and Customs Enf't*,
No. 1:19-CV-08876-JSR (S.D.N.Y. 2020) ..................................................... 4

*Presley v. Georgia*, 558 U.S. 209 (2010) ............................................................ 9

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)........................................ 3

*United States v. Guimaraes*, No. 1:25-CR-10129-JEK,
2025 WL 1899046 (D. Mass. July 9, 2025) ................................................... 8

*Waller v. Georgia*, 467 U.S. 39 (1984) ........................................................... 9-10

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................... 3

## STATE CASES

*Matter of Associated Press v. Bell*, 70 N.Y.2d 32 (1987) ...................................... 10

*Matter of Kurtzrock*, 192 A.D.3d 197 (2d Dep't 2020) ......................................... 9

*People v. D.B.*, ___ N.Y.S.3d ___,
2025 N.Y. Slip Op. 04148 (1st Dep't 2025) .................................................... 8

*Santana v. Peter Thomas Roth Labs LLC*,
2025 N.Y. Slip Op. 25142 (N.Y. Sup. Ct. Kings Co. June 14, 2025) ........................ 4

## FEDERAL STATUTES

28 U.S.C. § 2241(c)(5)........................................................................................ 8

## STATE STATUTES

C.P.L. § 30.30(4)(e) ................................................................................ 8

N.Y. Civ. Rights Law § 28 ....................................................................... 1

N.Y. Exec. Law § 642-a(3) ..................................................................... 10

N.Y. Exec. Law § 642-a(6) ..................................................................... 10

N.Y. Exec. Law § 647 ............................................................................... 9

## OTHER AUTHORITIES

Aaron Katersky and Meredith Deliso, *NYC sees 'historic drop' in crime, police commissioner says*, ABC News (Apr. 3, 2025), https://abcnews.go.com/US/nyc-sees-historic-drop-crime-police-commissioner/story?id=120451739 .................................................................. 12

Alexander Villareal, *US immigrants detained at mandatory check-ins and court hearings*, The Guardian (Feb. 18, 2025), https://www.theguardian.com/us-news/2025/feb/18/trump-immigration-dragnet ....................................................................................................... 6

Brooke A. Lewis, *HPD chief announces decrease in Hispanics reporting rape and violent crimes compared to last year*, Chron (Apr. 6, 2017), https://www.chron.com/news/houston-texas/houston/article/HPD-chief-announces-decrease-in-Hispanics-11053829.php ......................................... 4

*Case Dismissals in Immigration Court to Facilitate ICE Arrests Violates Due Process and Undermines Access to Humanitarian Protections*, N.Y.C. Bar Ass'n (Jul. 2025), https://www.nycbar.org/reports/case-dismissals-in-immigration-court-to-facilitate-ice-arrests-violates-due-process-and-undermines-access-to-humanitarian-protections/?back=1 ............................................... 5

Douglas Keith, *Former Judges Denounce Immigration Arrests at Courthouses*, Brennan Ctr. for Just. (Dec. 12, 2018), https://www.brennancenter.org/our-work/analysis-opinion/former-judges-denounce-immigration-arrests-courthouses ........................................... 3, 5

James Queally, *Fearing deportation, many domestic violence victims are steering clear of police and courts*, L.A. Times (Oct. 9, 2017), https://www.latimes.com/local/lanow/la-me-ln- undocumented-crime-reporting-20171009-story.html ...........................................................................................4

Press Release, *Safer Streets: Governor Hochul Announces Statewide Shootings Fall Another 9% as State Continues to Experience Record Low Gun Violence* (May 27, 2025), https://www.governor.ny.gov/news/safer-streets-governor-hochul-announces-statewide-shootings-fall-another-9-state-continues ......................................................12

Thomas Pearson, *The Impact of Immigration Status on Crime Reporting: Evidence from DACA*, J. Urb. Econ. 143 (Sept. 2024), https://tinyurl.com/yr8vrpvx ...................3

## INTEREST OF AMICI CURIAE

The District Attorneys of New York County ("Manhattan DA") and Kings County ("Brooklyn DA") and 18 other district attorneys across the state[1] submit this brief as amici curiae in support of defendants. In New York State, amici are constitutional officers charged with the public duty of prosecuting crimes, seeking justice for victims, and protecting the communities we serve. Our work depends on the willingness of victims and witnesses—some of whom are part of New York's most vulnerable populations—to come forward, enter courthouses, and provide evidence in support of amici's prosecutorial functions. The Protect Our Courts Act ("POCA"), N.Y. Civ. Rights Law § 28(1), supports these important prosecutorial functions by preventing warrantless[2] civil arrests in courthouses, including immigration arrests, which deter and prevent these members of our communities from fully cooperating with law enforcement.

Amici take no position on federal immigration-enforcement priorities generally. And nothing in POCA constitutes a blanket prohibition on federal immigration officers carrying out arrests of noncitizens involved in state criminal proceedings. Rather, POCA narrowly focuses on protecting the well-established principle—long recognized under both federal and state law—that courthouses play a critical public role that would be undermined by indiscriminate civil arrests, particularly in criminal cases. When victims and witnesses are gripped by the fear that simply entering a courthouse could lead to a civil immigration arrest, their willingness to seek justice is threatened. The Legislature enacted

---

[1] In addition to the Manhattan DA and Brooklyn DA, amici include the District Attorneys of Albany County, Bronx County, Broome County, Chenango County, Columbia County, Jefferson County, Madison County, Onondaga County, Ontario County, Otsego County, Queens County, Richmond County, Schenectady County, Schuyler County, Tompkins County, Washington County, Wayne County, and Westchester County.

[2] The statute defines a warrantless arrest as an arrest unsupported by "an arrest warrant or other judicial order, issued by a magistrate sitting in the judicial branch of a local or state government or of the federal government, authorizing a civil arrest and issued by the court in which proceedings following such arrest will be heard and determined." N.Y. Civ. Rights Law § 28(6)(d).

POCA to prevent the devastating harms to public safety that would result if vital criminal cases were to fall apart and violent offenders were to potentially walk free—leaving our communities more vulnerable and less safe.

Amici have a direct interest in the continuing validity of POCA, which was enacted based on the experience of prosecutors statewide. Prior to POCA's enactment, amici saw first-hand how warrantless courthouse arrests chilled cooperation from witnesses and victims, especially in cases involving human trafficking, sexual violence, and domestic abuse. Amici have achieved historic public safety gains in our communities, but those gains would be jeopardized without POCA's protections. Amici submit this brief to explain to the Court why invalidating POCA would impose distinct harm to amici's constitutionally delegated sovereign function of prosecuting crimes and keeping our communities safe.

## ARGUMENT

### WARRANTLESS CIVIL ARRESTS IN COURTHOUSES OBSTRUCT CRIMINAL PROSECUTIONS AND UNDERMINE PUBLIC SAFETY

POCA recognizes the important function that state criminal proceedings serve in ensuring the public safety of New York communities. Federal law and policy has long recognized this interest as well. Thus, federal common law has historically protected state proceedings from the harmful effects of civil courthouse arrests. *See New York v. U.S. Immigration and Customs Enf't*, 431 F. Supp. 3d 377, 388 (S.D.N.Y. 2019); *see also Doe v. U.S. Immigration and Customs Enf't*, 490 F. Supp. 3d 672, 691 (S.D.N.Y. 2020). And federal immigration law has likewise coexisted with the principle that civil immigration arrests should not take place in courthouses. Far from repudiating compelling state interests in public safety and criminal prosecution, the federal Immigration and Nationality Act ("INA") thus incorporates the privilege against civil courthouse arrests. *See New York*, 431 F. Supp. 3d at 392; *Doe* 490 F. Supp. 3d at 692. This respect for the sovereign state function of prosecuting crimes reflects a

broader federal policy of "preclud[ing] federal intrusion into ongoing state criminal prosecutions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 70 (2013); *see also Younger v. Harris*, 401 U.S. 37 (1971). POCA thus effectuates policies already long recognized by Congress, the federal courts, and basic common-law principles. Without these protections, as amici explain below, unchecked civil arrests in state courthouses threaten public safety and impair state criminal prosecutions.

### A. Warrantless Civil Arrests in State Criminal Courthouses Chill Victim and Witness Cooperation.

Amici rely on the cooperation of the communities they serve to investigate crimes and initiate criminal proceedings. However, many noncitizen victims and witnesses are deterred from engaging with law enforcement if they could be arrested by immigration agents in or near criminal courthouses. Noncitizens are already less likely than the general population to report crimes to the police.[3] In Manhattan, for example, many noncitizen victims report crimes only to their consulates because they fear speaking to prosecutors or the police. The specter of warrantless civil courthouse arrests exacerbates this problem.[4] And even if a crime is reported, noncitizens may refuse to testify in grand jury proceedings, hampering the ability of prosecutors to bring charges, prove cases beyond a reasonable doubt, or enter into plea bargains that balance justice for all parties in a criminal proceeding. These added barriers mean that fewer crimes would be prosecuted and that district attorneys would need to invest greater time and resources to prosecute cases.

These are not merely hypothetical concerns. Data gathered in the years immediately preceding the enactment of POCA—and presented to the Legislature—evidenced these problems. During that

---

[3] *See, e.g.*, Thomas Pearson, *The Impact of Immigration Status on Crime Reporting: Evidence from DACA*, J. Urb. Econ. 143 (Sept. 2024), https://tinyurl.com/yr8vrpvx.

[4] Douglas Keith, *Former Judges Denounce Immigration Arrests at Courthouses*, Brennan Ctr. for Just. (Dec. 12, 2018), https://www.brennancenter.org/our-work/analysis-opinion/former-judges-denounce-immigration-arrests-courthouses ("ICE's reliance on immigration arrests in courthouses instill fear in clients and deters them from seeking justice in a court building.").

period, civil immigration arrests at or near state courthouses "skyrocketed" due to changes in ICE policies that made "everyone a priority" irrespective of impact on the state criminal justice system or public safety in local communities.[5] While those policies were in effect, the Brooklyn DA received "numerous" reports from a diverse group of stakeholders—including community members, defender organizations, and police officials—that noncitizens were "more reluctant" to report crimes because they feared that it could lead to their arrest by ICE.[6] Noncitizen victims and witnesses in Queens County similarly expressed "extreme reluctance" to come to court to testify in grand jury proceedings.[7]

Holding perpetrators of noncitizen victims accountable would be difficult if noncitizen victims and witnesses refuse to testify out of fear of civil immigration arrest. Cases that typically rely on witness testimony, like sexual assault and domestic violence, would be especially impacted. Victims of these crimes already face significant personal, financial, and societal disincentives to report their abusers' actions. Noncitizens would be even less likely to cooperate with law enforcement officials if they also had to weigh the possibility of ICE arrests in and around courthouses. When "courtrooms are perceived as opportunities for ICE enforcement," noncitizens are deterred from showing up to court, even if they have a vested interest to do so. *Santana v. Peter Thomas Roth Labs LLC*, 2025 N.Y. Slip Op. 25142, at *2 (N.Y. Sup. Ct. Kings Co. June 14, 2025). Indeed, this pattern has previously played out in other cities following increased ICE arrests in courthouses.[8] Given the crucial role that witness

---

[5] *See* Plaintiffs' Local Rule 56.1 Statement of Material Facts ¶¶ 46-47, *New York v. United States Immigration and Customs Enf't*, No. 1:19-CV-08876-JSR (S.D.N.Y. 2020).

[6] *Id.* at ¶ 201.

[7] *Id.* at ¶ 214.

[8] *See* James Queally, *Fearing deportation, many domestic violence victims are steering clear of police and courts*, L.A. Times (Oct. 9, 2017), https://www.latimes.com/local/lanow/la-me-ln-undocumented-crime-reporting-20171009-story.html; Brooke A. Lewis, *HPD chief announces decrease in Hispanics reporting rape and violent crimes compared to last year*, Chron (Apr. 6, 2017), https://www.chron.com/news/houston-texas/houston/article/HPD-chief-announces-decrease-in- Hispanics-11053829.php.

testimony plays in these cases, prosecutors may be unable to obtain convictions in cases involving noncitizen victims if those victims are too fearful to present testimony and evidence in criminal cases.

A practical indication that state criminal prosecutions would be threatened by more immigration courthouse arrests can be seen by the reaction when, in early 2025, ICE implemented a policy of arresting noncitizens attending their federal immigration court proceedings.[9] Many noncitizen victims do not perceive a distinction between local and federal law enforcement and have become fearful that ICE will also be present in state courthouses.[10] Due to ICE's policy change, amici are once again experiencing a marked increase in the number of noncitizen victims and witnesses expressing fears of attending criminal court proceedings. For example, the Manhattan DA has found that the number of calls to its Immigrant Affairs and Worker Protection hotlines almost completely dried up in 2025. The Albany County DA has had to send witness advocates to accompany investigators when they pick up victims to testify in court so that the victims are confident that the investigators are not immigration officials. And in multiple cases identified by the Brooklyn DA's Victim Services Unit in 2025, victims of domestic violence ceased cooperating with the prosecution out of a distinct fear that they would be arrested by ICE if they came to court to testify to grand juries. In each of these cases, the Brooklyn DA was forced to dismiss the case, allowing the defendants to evade culpability and depriving the victims of justice.

POCA can allow prosecutors to address the concerns of noncitizens victims and witnesses. In numerous cases within the Brooklyn DA's office, prosecutors explicitly relied on POCA to encourage

---

[9] *See Case Dismissals in Immigration Court to Facilitate ICE Arrests Violates Due Process and Undermines Access to Humanitarian Protections*, N.Y.C. Bar Ass'n (Jul. 2025), https://www.nycbar.org/reports/case-dismissals-in-immigration-court-to-facilitate-ice-arrests-violates-due-process-and-undermines-access-to-humanitarian-protections/?back=1.

[10] Douglas Keith, *Former Judges Denounce Immigration Arrests at Courthouses*, Brennan Ctr. for Just. (Dec. 12, 2018), https://www.brennancenter.org/our-work/analysis-opinion/former-judges-denounce-immigration-arrests-courthouses.

cooperation from victims and witnesses who expressed a fear that ICE agents would effectuate civil immigration arrests within state courthouses. For instance, in a case involving a felony robbery by a recidivist offender, the victim expressed a fear of testifying to the grand jury in Brooklyn's criminal courthouse after reading numerous reports of ICE doing so within immigration courthouses.[11] Brooklyn DA staff and other law enforcement agencies assured the victim of POCA's protections, and the victim did eventually testify to the grand jury. In another case involving felony child abuse charges, the victim's family expressed a fear of coming to court due to reports of ICE arrests within courthouses. Brooklyn DA staff engaged with the victim and the victim's family to overcome these fears and eventually resolved these concerns so they could testify to the grand jury. Sexual assault victims have also recently expressed concerns that cooperating with prosecutors would expose them to civil immigration arrests in courthouses. Brooklyn DA prosecutors conveyed the protections of POCA to the victims to encourage them to cooperate with prosecutors and to testify in grand jury proceedings and at trial. Without POCA, prosecutors would be unable to make such reassurances to secure the participation of victims and witnesses.

### B. Warrantless Civil Arrests in State Courthouses Help Defendants Evade Accountability and Frustrate Amici's Ability to Prosecute Crimes.

Beyond chilling noncitizen victims and witnesses from cooperating with amici, civil courthouse arrests also obstruct amici's ability to prosecute cases in other ways. ICE detentions of noncitizen defendants make it substantially harder for prosecutors to go forward in those cases and, in some instances, result in defendants evading or absconding from justice altogether. The outcome

---

[11] *See* Alexander Villareal, *US immigrants detained at mandatory check-ins and court hearings*, The Guardian (Feb. 18, 2025), https://www.theguardian.com/us-news/2025/feb/18/trump-immigration-dragnet.

is that prosecutors would need to expend greater resources to secure fewer convictions, and more victims would be deprived of justice in their cases.

Warrantless civil immigrations arrests in state courthouses enable some noncitizen defendants to escape criminal liability altogether. On numerous occasions between 2017 and 2020, ICE arrested noncitizen defendants on their way to criminal courthouses in Brooklyn and Queens and then removed them from the country while their criminal cases were still pending.[12] In one instance, the Brooklyn DA's Domestic Violence Bureau prosecuted a noncitizen defendant on felony sex offenses over a span of several months, but shortly before his case could be resolved, ICE arrested him while he was en route to the courthouse. The Brooklyn DA immediately submitted a writ to produce, but ICE removed the defendant from the country within days of his immigration arrest. Following his removal, the defendant "taunted the victim" with social media posts showing him "carefree and happy." The victim felt "very upset" that the defendant was "in another country now enjoying himself," while she had been "let down by the justice system."[13]

Civil immigration arrests in or near courthouses would also significantly increase the number of noncitizen defendants detained in ICE custody with pending criminal matters. This outcome places onerous burdens on amici to locate and secure the presence of those defendants for hearings and trials in New York. A noncitizen defendant's detention by ICE delays their criminal case and raises legal concerns regarding a defendant's constitutional and statutory rights to a speedy trial. Consequently, prosecutors would first need to file a writ of *habeas corpus ad prosequendum* ("writ to produce") with a state court judge and then present that writ to ICE to allow a temporary transfer of custody to local detention for prosecution purposes.[14] ICE makes clear that it is not obligated to honor a state court

---

[12] Plaintiffs' Local Rule 56.1 Statement of Material Facts ¶¶ 145, 162-68.

[13] *Id.* ¶¶ 147-61.

[14] *Id.* ¶ 172.

writ to produce.[15] And even in cases where ICE does honor a writ to produce, prosecutors must task detectives to transport defendants from sometimes faraway and remote localities. These logistics often include extensive overtime, transportation, and security costs while also delaying justice in criminal cases. For instance, in a vehicular manslaughter case, prosecutors not only had to petition ICE headquarters in Washington, D.C. to release a defendant to state court custody for prosecution over the objections of the local ICE field office, but also had to send detectives to transport the defendant to New York from Louisiana. Between 2017 and 2020, district attorneys in Brooklyn and Westchester County found that producing noncitizen defendants detained by ICE was "time-consuming, burdensome, and often unsuccessful."[16] In another instance, prosecutors secured compliance with a state court writ to produce after being denied by an ICE deportation officer by informing ICE that the prosecutor would secure a federal court order pursuant to 28 U.S.C. § 2241(c)(5), which was a wasteful and time-consuming exercise for the prosecutor.

Even obtaining a writ to produce or other order is sometimes not enough because ICE frequently fails to honor the writs, necessitating adjournments in the defendants' criminal proceedings and threatening dismissal of their criminal cases.[17] One appellate court has recently ruled that a defendant's time spent in immigration detention is excludable under New York's speedy-trial statute, N.Y. C.P.L. § 30.30(4)(e), only if the People make "reasonable and diligent efforts in obtaining [the] defendant from federal custody." *People v. D.B.*, ___ N.Y.S.3d ___, 2025 N.Y. Slip Op. 04148, at *1 (1st Dep't 2025) (internal quotation marks omitted). Unless prosecutors undertake extensive and time-

---

[15] *See, e.g., Fritz v. Young*, No. 2:11-CV-1766, 2012 WL 730099, at *2 (W.D. La. Jan. 30, 2012) ("ICE reserves the right not to honor a state court writ"); *United States v. Guimaraes*, No. 1:25-CR-10129-JEK, 2025 WL 1899046, at *4 (D. Mass. July 9, 2025) (discussing ICE's deportation of a criminal defendant with an open case despite a writ to produce being lodged by the U.S. Attorney's Office).

[16] Plaintiffs' Local Rule 56.1 Statement of Material Facts ¶ 174-77.

[17] *Id.* ¶¶ 178-79; *see id.* at ¶ 140.

consuming efforts, noncitizen defendants could potentially be entitled to dismissal of their criminal case. This creates a perverse outcome that enables criminal noncitizen defendants to completely evade accountability for their actions in amici's jurisdictions and deprive victims of the justice they deserve.

### C. Warrantless Civil Courthouse Arrests Impair the Constitutional and Statutory Rights of Victims and Witnesses Afforded by Federal and State Law.

ICE courthouse arrests would also obstruct constitutional guarantees provided to victims and witnesses. Amici have a duty to ensure that justice is done in each case, and the rights of all parties are respected. *See Matter of Kurtzrock*, 192 A.D.3d 197, 216 (2d Dep't 2020) ("The District Attorney . . . is a quasi-judicial official and his [or her] primary duty is to see that justice is done and the rights of all— defendants included—are safeguarded"). In particular, under state law, amici have an important interest in ensuring that judges effectuate the rights that the Legislature has provided to crime victims and that victims have the opportunity to participate in plea bargaining and sentencing proceedings. For many felony offenses, judges must consider the views of victims and their family members with respect to pleas and sentences. *See* N.Y. Exec. Law § 647. At sentencing, victims can present their impact statements directly to the judge. The voices of victims would be effectively silenced if they were too frightened to take part in the plea-bargaining process or to show up to a sentencing proceeding. These effects would in turn hinder amici's ability to ensure that sentencing determinations reflect just outcomes that account for victim and community harms.

Courthouse arrests would also frustrate the policy objectives underlying New York State's mandate to accommodate public attendance at criminal trials. *See Presley v. Georgia*, 558 U.S. 209, 215 (2010). The Sixth Amendment right to a public trial protects the truth-seeking goal of criminal proceedings, which advances public safety and "benefits . . . society as a whole." *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982). In particular, "a public trial encourages witnesses to come forward and discourages perjury." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The

policy concerns favoring open proceedings apply equally to suppression hearings. *See id.* at 47; *see also Matter of Associated Press v. Bell*, 70 N.Y.2d 32, 37 (1987). But these objectives would be thwarted if members of the public—particularly those from immigrant communities or family members of victims, witnesses, and defendants—did not attend out of fear that they could be arrested by ICE in or near the courthouse. For example, in recent homicide and attempted homicide cases in Albany and Brooklyn, family members of the victim ceased coming to court. In both instances, the family expressed fears to prosecutors that continual support of the victim by attending court would expose them to arrest by ICE agents in the courthouse.

Warrantless civil courthouse arrests also impair amici's ability to safeguard statutory protections created for child witnesses and victims. Judges are directed to take "appropriate action to ensure a speedy trial in all proceedings involving an alleged child victim." N.Y. Exec. Law § 642-a(3). But delays caused by noncitizen defendants in immigration detention, or by noncitizen witnesses who fail to appear in court, would significantly delay proceedings involving child victims. Child witnesses are also entitled to have a "supportive" person present and accessible to them at all times during their testimony. N.Y. Exec. Law § 642-a(6). Child witnesses would be deprived of that right if their noncitizen parents were too afraid to accompany them to court for fear of immigration arrest.

### D. Courthouse Arrests Make Immigrant Populations Particularly Vulnerable to Crime and Create a Chilling Effect in Immigrant Communities.

Already vulnerable to crime, noncitizens would become even more so if they feared the possibility of ICE arrests in or near criminal courthouses. Wrongdoers would be emboldened to prey on noncitizens, safe in the knowledge that their victims are unlikely to report the crime or testify in court. Prior to POCA's enactment, the Brooklyn DA noticed that neighborhoods with higher rates of

noncitizens experienced increased criminal activity. Prosecutors attributed this uptick in crime to wrongdoers knowing that noncitizens were "easy targets" due to their fear of courthouse arrests.[18]

If a noncitizen victim did cooperate with law enforcement, ICE could be weaponized against them: the person targeting the victim could notify immigration officials when the noncitizen victim is scheduled to appear in court. And even if there were no explicit threat, noncitizens would be aware of this possibility. The overwhelming chilling effect that this would create would facilitate the targeting of noncitizens. Again, these are not theoretical harms. Even with POCA in effect, non-citizen victims have informed the Manhattan DA that their traffickers frequently tell them that they will be deported if they seek help from local law enforcement—a threat that would have even more power if ICE could arrest the victim during court appearances or on the victim's way to or from a state criminal courthouse.

The harmful impact on public safety would be felt most acutely in the types of cases where noncitizens make up a disproportionate share of the victim population, such as human trafficking, wage theft, and fraud schemes targeting immigrants. If noncitizens were reluctant to report these crimes because they feared the possibility of ICE arrests, they would surely be targeted in even greater numbers. Noncitizen survivors of domestic violence would also be particularly vulnerable to increased victimization. Victims may choose not to seek orders of protection or other forms of relief against their abusers in order to avoid showing up in court. These ramifications for public safety, once put in motion, would not be easily undone. Despite "tremendous" community outreach by the Brooklyn DA between 2017 and 2020, noncitizen victims of domestic violence still felt "terrified to come forward."[19]

---

[18] Plaintiffs' Local Rule 56.1 Statement of Material Facts ¶ 211.

[19] *Id.* ¶¶ 202-05.

\*        \*        \*

Amici have achieved unprecedented public safety reductions in crime, especially as it relates to homicides, gun violence, and recidivist offenders.[20] POCA supports those efforts. POCA's protections have also shielded New York criminal courts from the chaotic and disruptive immigration arrests that have occurred in other jurisdictions throughout the country. Removal of POCA protections would damage the trust that amici have worked hard to build with victims and witnesses and would threaten to undermine the substantial public safety gains that amici have secured statewide.

---

[20] Aaron Katersky and Meredith Deliso, *NYC sees 'historic drop' in crime, police commissioner says*, ABC News (Apr. 3, 2025), https://abcnews.go.com/US/nyc-sees-historic-drop-crime-police-commissioner/story?id=120451739; *see also* Press Release, *Safer Streets: Governor Hochul Announces Statewide Shootings Fall Another 9% as State Continues to Experience Record Low Gun Violence* (May 27, 2025), https://www.governor.ny.gov/news/safer-streets-governor-hochul-announces-statewide-shootings-fall-another-9-state-continues.

## CONCLUSION

Defendants' motion to dismiss should be granted.

Respectfully submitted,

ERIC GONZALEZ
District Attorney
Kings County

ALVIN L. BRAGG, JR.
District Attorney
New York County

JILL HARRIS
   *Chief, Policy and Strategy*
DAVID SATNARINE
   *Executive ADA for Immigrant Affairs*
    *Of Counsel*

By: */s/ David Gagne*
DAVID GAGNE
   *Assistant District Attorney*
STEVEN C. WU
   *Chief, Appeals Division*
CECELIA CHANG
   *Counsel, Appeals Division*
    *Of Counsel*

August 2025

(*additional counsel listed on following pages*)

LEE C. KINDLON
  *District Attorney*
  *Albany County*
6 Lodge St.
Albany, NY 12207

DARCEL D. CLARK
  *District Attorney*
  *Bronx County*
198 E. 161st St.
Bronx, NY 10451

F. PAUL BATTISTI
  *District Attorney*
  *Broome County*
45 Hawley St.
Binghamton, NY 13902

MICHAEL D. FERRARESE
  *District Attorney*
  *Chenango County*
26 Conkey Ave.
Norwich, NY 13815

CHRIS LIBERATI-CONANT
  *District Attorney*
  *Columbia County*
325 Columbia St.
Hudson, NY 12534

KRISTYNA S. MILLS
  *District Attorney*
  *Jefferson County*
175 Arsenal St.
Watertown, NY 13601

ROBERT A. MASCARI
  *Acting District Attorney*
  *Madison County*
138 N. Court St.
Wampsville, NY 13163

WILLIAM J. FITZPATRICK
  *District Attorney*
  *Onondaga County*
505 S. State St.
Syracuse, NY 13202

JAMES B. RITTS
  *District Attorney*
  *Ontario County*
20 Ontario St.
Canandaigua, NY 14424

JOHN M. MUEHL
  *District Attorney*
  *Otsego County*
197 Main St.
Cooperstown, NY 13326

MELINDA KATZ
  *District Attorney*
  *Queens County*
125-01 Queens Blvd.
Kew Gardens, NY 11415

MICHAEL E. MCMAHON
  *District Attorney*
  *Richmond County*
130 Stuyvesant Pl.
Staten Island, NY 10301

ROBERT M. CARNEY
  *District Attorney*
  *Schenectady County*
612 State St.
Schenectady, NY 12305

JOSEPH G. FAZZARY
  *District Attorney*
  *Schuyler County*
105 Ninth St.
Watkins Glen, NY 14891

MATTHEW VAN HOUTEN
   *District Attorney*
   *Tompkins County*
320 N. Tioga St.
Ithaca, NY 14850

J. ANTHONY JORDAN
   *District Attorney*
   *Washington County*
383 Upper Broadway
Fort Edward, NY 12828

CHRISTINE K. CALLANAN
   *District Attorney*
   *Wayne County*
30 Church St.
Lyons, NY 14489

SUSAN CACACE
   *District Attorney*
   *Westchester County*
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601

Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

STATE OF NEW YORK; KATHLEEN
HOCHUL, Governor of New York, *in her
Official Capacity*; LETITIA A. JAMES,
Attorney General of New York, *in her
Official Capacity*,

*Defendants*.

Civil Action No.
1:25-CV-00744-MAD-PJE

# [PROPOSED] ORDER

Before the Court is the motion on consent of the New York District Attorneys for leave

to file a brief as amicus curiae in the above-captioned action in support of Defendants' motion

to dismiss (Dkt. No. 11). For the reasons set forth therein, the motion is GRANTED.

SO ORDERED.

Dated this _____ day of _____, 2025.

_____
THE HON. MAE A. D'AGOSTINO
UNITED STATES DISTRICT JUDGE