UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

                v.

STATE OF NEW YORK; KATHLEEN HOCHUL,
Governor of New York, in her Official Capacity;
LETITIA A. JAMES, Attorney General of New York,
in her Official Capacity,

                Defendants.

No. 25-cv-744 (MAD) (PJE)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
*New York State Attorney General*
28 Liberty Street
New York, New York 10005

LINDA FANG
*Special Litigation Counsel*
*of Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ..................................................................................................................1

    I.       THE COMPLAINT FAILS TO STATE A PREEMPTION CLAIM ......................1

        A.    The Absence of Clear Language in the INA Displacing State Law
            Protections Forecloses Plaintiff's Preemption Claim.................................................1

        B.    The Challenged State Protections Do Not Conflict with Federal Law ......................5

    II.      PLAINTIFF'S INTERGOVERMENTAL IMMUNITY CLAIM FAILS .................8

CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*African Communities Together v. Lyons*, __ F. Supp. 3d __,
  2025 WL 2633396 (S.D.N.Y. Sept. 12, 2025) ........................................................... 6

*Arizona v. United States*, 567 U.S. 387 (2012) .......................................................... 2

*Baumgartner v. Baumgartner*, 273 A.D. 411 (1st Dep't 1948) ................................. 6

*Chauvin v. Dayon*, 14 A.D.2d 146 (3d Dep't 1961) ...................................................... 6

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018),
  *vacated in part on other grounds*, 2018 WL 4268817 (7th Cir. June 4, 2018) ...................... 10

*City of Milwaukee v. Illinois*, 451 U.S. 304 (1981) ..................................................... 6

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) ................................... 8

*CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025) .................. 9

*DeCanas v. Bica*, 424 U.S. 351 (1976) ......................................................................... 2

*Doe v. U.S. Immigration & Customs Enforcement*,
  490 F. Supp. 3d 672 (S.D.N.Y. 2020) ................................................................. 4, 5, 6

*Ex Parte Russell*, 19 Ves. Jun. 163 (1812) .................................................................. 7

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ................................................................... 5

*Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) .......................... 8

*New England Ind. v. Margiotti*, 270 A.D. 488 (1st Dep't 1946) .................................. 6

*Ocean Cnty. Bd. of Comms. v. Attorney Gen. of State of New Jersey*,
  8 F.4th 176 (3d Cir. 2021) ...................................................................................... 8

*Parker v. Marco*, 136 N.Y. 585 (1893) ......................................................................... 6

*Printz v. United States*, 521 U.S. 898 (1997) ............................................................... 8

*Raoul v. McHenry County*, 44 F.4th 581 (7th Cir. 2022) ............................................. 9

*State of New York v. Department of Justice*, 951 F.3d 84 (2d Cir. 2020) ..................... 8

**Cases**                                                                                       **Page(s)**

*State of New York v. U.S. Immigration & Customs Enforcement,*
    431 F. Supp. 3d 377 (S.D.N.Y. 2019) ................................................................... 4, 5, 6

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) .......................................... 9

*United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012) ...................................... 2

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ........................................ 9

*United States v. Illinois*, ___ F. Supp. 3d ___,
    2025 WL 2098688 (N.D. Ill. July 25, 2025) ...................................................... 10

*United States v. New Jersey*, No. 20-cv-1364,
    2021 WL 252270 (D.N.J. Jan. 26, 2021) ........................................................... 10

*Velazquez-Hernandez v. U.S. Immigration & Customs Enforcement,*
    500 F. Supp. 3d 1132 (S.D. Cal. 2020) .............................................................. 4

*Virginia Uranium, Inc. v. Warren*, 587 U.S. 761 (2019) ........................................... 7

*Washington v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 3d 863 (W.D. Wash. 2020) .............. 4

*Whitman v. American Trucking Ass'n.*, 531 U.S. 457 (2001) ....................................... 5

*Zirinsky v. Zirinsky*, 77 Misc. 2d 954 (N.Y. Sup. Ct. 1974) ..................................... 6


**Statutes**

8 U.S.C. § 1226 ...................................................................................... 3

8 U.S.C. § 1229 ................................................................................... 4, 5

8 U.S.C. § 1357 ...................................................................................... 3

8 U.S.C. § 1367 ...................................................................................... 4

8 U.S.C. § 1373 ...................................................................................... 8

Civil Rights Law § 23 ............................................................................... 3

Civil Rights Law § 25 ............................................................................... 3

Ohio Senate Bill No. 172 (2025-2026) ............................................................... 5

**Statutes**                                                                           **Page(s)**

Violence Against Women and Department of Justice Reauthorization Act of 2005,
    Pub. L. No. 109-162, § 825, 119 Stat. 2960 (2006) .................................................... 4

**Regulations**

9 N.Y.C.R.R. § 8.170 ......................................................................................................... 1

9 N.Y.C.R.R. § 8.170.1 ...................................................................................................... 1

**Other Authorities**

Assembly's Mem. in Supp., *in* Bill Jacket for ch. 322 (2020) ........................................ 3

## ARGUMENT

The New York Legislature enacted the Protect Our Courts Act ("POCA") in 2020 to protect the State's judicial system and public safety from the significant and direct harms resulting from the federal government's disruptive civil immigration arrests that targeted state courthouses. The Governor also issued executive orders in 2017 and 2018[1] to direct state employees in the performance of their state-law duties and prevent disruptions to the conduct of state business in state facilities. As defendants explained in their opening brief, these exercises of the State's sovereign powers are not displaced by the Immigration and Nationality Act ("INA"), and do not conflict with federal law or violate intergovernmental immunity. Rather, they are valid enactments in areas of traditional state concern tailored to protecting the State's core sovereign interests from improper federal interference. The Court should thus dismiss the complaint in its entirety.

## I.    THE COMPLAINT FAILS TO STATE A PREEMPTION CLAIM

### A.    The Absence of Clear Language in the INA Displacing State Law Protections Forecloses Plaintiff's Preemption Claim

As defendants previously explained, plaintiff's conflict preemption claim directed at POCA and Executive Order 170.1 fails as a matter of law for two independent reasons. First, the INA's provisions granting civil arrest authority do not contain a clear statement of congressional intent to displace state prohibitions against civil arrests at state courthouses and other state facilities. Second, the INA similarly does not contain a clear statement abrogating established common law protections against civil courthouse arrests, and thus the INA should be construed to have incorporated these longstanding principles—foreclosing any conflict between federal and

---

[1] At issue are Executive Order 170, which pertains to the duties of state officials and state law enforcement officers, and Executive Order 170.1, which prohibits certain civil immigration arrests at state facilities absent a judicial order or warrant. *See* 9 N.Y.C.R.R. §§ 8.170, 8.170.1.

state law. And plaintiff's claim that Executive Order 170 is conflict preempted fails because no provision of federal law mandates that state officials conduct immigration-status inquiries or share residents' personal information with immigration officials for civil immigration purposes.

The thrust of plaintiff's response is that the federal government is permitted to disregard— and wholly set aside—*any* state laws that might incidentally have some impact on immigration enforcement because "the INA spoke comprehensively to how the Federal Government will enforce federal immigration law." *See* Pl.'s Opp. (ECF No. 60) at 16. There is no support for this extraordinary proposition. Although courts have found some state laws relating to immigration preempted, they have done so only with respect to state laws that effectively sought to regulate immigration itself, or penalized conduct expressly regulated by federal law. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 402 (2012) (state laws that imposed penalties for non-citizen registration and working without federal authorization displaced by comprehensive federal schemes regulating such conduct); *United States v. Alabama*, 691 F.3d 1269, 1293, 1296 (11th Cir. 2012) (state law that barred undocumented persons "from enforcing contracts for basic necessities" preempted as a "thinly veiled attempt to regulate immigration").

By contrast, and contrary to plaintiff's claim (Pl.'s Opp. at 12-13), POCA's protections are tailored to protecting the functioning of the State's judicial system and do not represent any attempt by the State to regulate immigration. *See DeCanas v. Bica*, 424 U.S. 351, 355 (1976) (that non-citizens may be impacted by a state law "does not render [the law] a regulation of immigration"). Neither POCA nor the challenged executive orders alter whom the federal government may remove or on what grounds, but instead seek only to protect core features of the State's sovereignty from federal actions that had caused significant harms. *See* Def.'s Mem. (ECF No. 11-1) at 3-7.

That the INA generally authorizes civil immigration arrests does not override the overwhelming state sovereign interest in protecting state courthouses and access thereto.

Plaintiff thus misses the mark by contending that POCA does not regulate in an area of traditional state concern, and urging the Court to dismiss the New York Legislature's stated justifications for POCA as "irrelevant." *See* Pl.'s Opp. at 12-14. The legislative record surrounding POCA makes clear that the law was enacted to protect "the operation of [the State's] judicial system and public safety" from the demonstrated chilling effects of civil courthouse arrests that directly impaired these compelling state interests. *See* Assembly's Mem. in Supp., *in* Bill Jacket for ch. 322 (2020), at 8; Def.'s Mem. at 3-7, 12 (describing legislative record); *see also* Proposed Amicus Brief of New York District Attorneys (Ex. A to ECF No. 30) at 3-9, 10-11 (attesting to harms to public safety and ability of prosecutors to enforce the criminal laws); Brief of Amici Curae Eight Former New York Judges and Justices (ECF No. 25-1) at 4-11 (discussing disruptions to court functions and impairments to access to justice system). Plaintiff's wholesale dismissal of the State's interests cannot be squared with the basic principles underlying our federalist system.

Plaintiff's preemption claim also fails because at the time Congress enacted the INA, New York had long adopted statutory protections from certain civil arrests for those attending state court proceedings.[2] *See* Civil Rights Law §§ 23, 25 (protecting persons in "civil actions" and subpoenaed witnesses from civil arrest) (enacted by Laws of 1909, ch. 14). Nothing in the INA's provisions governing immigration arrests (8 U.S.C. §§ 1226, 1357) speaks to state courthouses— let alone indicates any clear intent to displace state law protections in these places. *See, e.g., Doe*

---

[2] Other States had also enacted similar statutory protections by the early 1900s. *See, e.g.*, Idaho Code § 9-1303 (protecting subpoenaed witnesses from "arrest in a civil action") (first codified in 1881); Texas Rev. Civ. Stat. 1911, art. 3646 ("Witnesses shall be privileged from arrest . . . during their attendance at court, and in going to and returning therefrom, allowing one day for each twenty-five miles from their place of abode").

*v. U.S. Immigration & Customs Enforcement*, 490 F. Supp. 3d 672, 692 (S.D.N.Y. 2020) ("the two civil arrests provisions in the INA—Sections 1226 and 1357—authorize arrests with and without a warrant respectively but do not speak to arrests in and around courthouses in *any way*") (emphasis in original). Such congressional silence cannot constitute the requisite "clear and manifest" statement necessary to preempt New York's laws. *E.g.*, *id.*; *State of New York v. U.S. Immigration & Customs Enforcement*, 431 F. Supp. 3d 377, 392 (S.D.N.Y. 2019); *Velazquez-Hernandez v. U.S. Immigration & Customs Enforcement*, 500 F. Supp. 3d 1132, 1143-44 (S.D. Cal. 2020); *Washington v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 3d 863, 879 n.21 (W.D. Wash. 2020). This absence of clear congressional language is fatal to plaintiff's preemption claim, irrespective of the distinct question of whether the INA is properly construed to have also incorporated longstanding common law protections against civil courthouse arrests.

In contending to the contrary, plaintiff mistakenly relies on a reference to courthouses in 8 U.S.C. § 1229(e), an ancillary provision of the INA concerning the content of certain removal notices. Section 1229(e) was passed in 2006 as part of the Violence Against Women Act. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825, 119 Stat. 2960, 3065 (2006). The provision, titled "Certification of Compliance with Restrictions on Disclosure," requires that notices issued to certain victims of abuse facing removal must contain a certification that immigration officials complied with federal laws prohibiting the misuse of information from abusers to support the victims' removal. *See* 8 U.S.C. §§ 1229(e), 1367. Specifically, section 1229(e) requires such a certification in cases where "an enforcement action leading to a removal proceeding was taken against" the non-citizen at, among other places, "a domestic violence shelter, rape crisis center," or "[a]t a courthouse . . . if the [non-citizen] is appearing in connection with a protection order case, child custody case, or other civil

4

or criminal case relating to domestic violence, sexual assault, trafficking, or stalking in which the [non-citizen] has been battered or subject to extreme cruelty." *Id.* § 1229(e)(1), (2)(A)-(B).

That Congress "acknowledged the practice of conducting immigration enforcement actions at state courthouses" (Pl.'s Opp. at 16) in an administrative provision about notices does not further plaintiff's preemption claim. Section 1229(e)'s reference that *some* enforcements actions, such as arrests, may occur at courthouses merely accounts for Congress's possible recognition that States may make different policy choices with respect to civil courthouse arrests such that immigration arrests may be permissible in some States or jurisdictions, even while they are unlawful in others. *See, e.g.*, Ohio Senate Bill No. 172 (2025-2026) (proposed law "to specify that persons who are unlawfully present in the United States are not privileged from arrest"), *available at* https://tinyurl.com/bdcrhryf (last visited Sep. 28, 2025). The courthouse reference may also contemplate that ICE agents may be conducting *criminal* arrests there, which the INA authorizes and the common law did not prohibit. *See State of New York*, 431 F. Supp. 3d at 393. At the very least, there is no basis for reading § 1229(e), which was intended to *protect* non-citizens and encourage them to participate in state-court proceedings to seek justice against their abusers as a "clear and manifest" expression of Congress's intent to make courthouses *less safe* by affirmatively authorizing ICE civil courthouse arrests. *See Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991) (cleaned up); *see, e.g.*, *Doe*, 490 F. Supp. 3d at 693 (section 1229(e) does not evince manifestly clear congressional intent to supplant state law); *State of New York*, 431 F. Supp. 3d at 391 (same); *see also Whitman v. American Trucking Ass'n.*, 531 U.S. 457, 468 (2001) (Congress "does not alter the fundamental details of a regulatory scheme" in "ancillary provisions").

## B.    The Challenged State Protections Do Not Conflict with Federal Law

In resisting the conclusion that the INA incorporated longstanding common law protections

against civil courthouse arrests, plaintiff contends that the common law privilege against civil arrests had disappeared by the time Congress enacted the INA in 1952, and that the privilege in any event does not apply to government arrests. Pl.'s Opp. at 15-16. These arguments are wrong and misapprehend the history and nature of the common law privilege.[3]

As defendants explained, New York's common law privilege has always protected parties and witnesses from civil arrests in courthouses and while traveling to and from, but later was *expanded* to protect against the service of summons as well. *See* Def.'s Mem. at 3, 12-13; *Parker v. Marco*, 136 N.Y. 585, 589 (1893). While the justifications for extending the privilege to cover the service of process may have been obviated by the development of the law around personal jurisdiction, there is no support for plaintiff's speculation that the core of the privilege—which protected against disruptions to the judicial process—ever waned over time. *See Doe*, 490 F. Supp. 3d at 691 (rejecting same argument); *State of New York*, 431 F. Supp. 3d at 391 (same). Plaintiff's suggestion that such a fundamental and longstanding privilege simply vanished (Pl.'s Opp. at 14-15) by the time the INA was enacted is belied by the ample New York authorities that continued to recognize the common law rule both prior to the INA's enactment and decades thereafter. *See, e.g.*, *New England Ind. v. Margiotti*, 270 A.D. 488, 490 (1st Dep't 1946); *Baumgartner v. Baumgartner*, 273 A.D. 411, 412-13 (1st Dep't 1948); *Chauvin v. Dayon*, 14 A.D.2d 146, 148 (3d Dep't 1961); *Zirinsky v. Zirinsky*, 77 Misc. 2d 954, 958 (N.Y. Sup. Ct. 1974).

---

[3] The *African Communities Together v. Lyons* decision cited by plaintiff (Pl.'s Opp. at 14 & n.9) does not warrant a different result. __ F. Supp. 3d __, 2025 WL 2633396 (S.D.N.Y. Sept. 12, 2025). The suit there was concerned with the distinct issue of whether ICE had statutory authority to conduct civil immigration arrests at *federal* immigration courthouses, and thus did not implicate the weighty federalism interests and questions before this Court. Nor did the court pass on the dispositive question before this Court of whether the INA "reflects Congress's clear and manifest purpose" to preempt state law. *Id.* at *18; *see also City of Milwaukee v. Illinois*, 451 U.S. 304, 316 (1981) (more stringent standard applies to determine whether federal statutory law displaced state common law as compared with federal common law).

Plaintiff fares no better with its argument that the common law privilege does not apply to arrests conducted by the government. Plaintiff is incorrect (Pl.'s Opp. at 15 n.11) that the privilege did not apply to arrests initiated by the sovereign. *See Ex Parte Russell*, 19 Ves. Jun. 163, 166 (1812) (debtor to the Crown "cannot be arrested by the Crown any more than by a subject" while attending bankruptcy proceedings; ordering release from Crown arrest). And contrary to plaintiff's contention, the absence of cases applying the common law privilege to civil immigration courthouse arrests does not support the inference that such arrests were outside the privilege. The more likely explanation is that civil immigration arrests, which were not commonplace until more recently, simply did not occur in state courthouses in light of settled common law protections, as confirmed by the fact that ICE's own policies previously counseled against such arrests. *See* Def.'s Mem. at 12 (citing prior ICE policies); *see also* Brief of Law and History Professors as Amici Curiae (ECF No. 28-1) at 4-5 (explaining that deportations and federal immigration enforcement are fairly recent phenomena).

Additionally, as defendants previously explained, the challenged executive orders regulate the permissible uses of state facilities and direct state officials in the performance of their duties and therefore do not conflict with federal law. *See* Def.'s Mem. at 17-21. "Invoking some brooding federal interest" is insufficient "to win preemption of a state law; a litigant must point specifically to a constitutional text or a federal statute that does the displacing." *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019) (cleaned up). No provision of the INA displaces the challenged orders or imposes conflicting duties on the part of state officials. Nor is it correct that "New York's position is that it cannot be *required* to provide information to federal authorities," as plaintiff claims (Pl.'s Opp. at 11 n.6). To the contrary, nothing in Executive Order 170 prevents the disclosure of information to federal officials where the disclosures are "required by law"—for

example, when authorized by judicially issued warrants or orders or subpoenas.

Plaintiff is also mistaken in relying on 8 U.S.C. § 1373 as the basis for its conflict preemption claim, asserting that "the Second Circuit has twice confirmed the preemptive effect of Section 1373(a)" in *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999) and *State of New York v. Department of Justice*, 951 F.3d 84 (2d Cir. 2020). Pl.'s Opp. at 10. Neither of these cases concerned preemption.[4] If anything, courts have consistently concluded that § 1373 is *not* a valid basis for preemption. *See, e.g., Ocean Cnty. Bd. of Comms. v. Attorney Gen. of State of New Jersey*, 8 F.4th 176, 181-82 (3d Cir. 2021); Def.'s Mem. at 18-19.

In addition, and contrary to plaintiff's argument (Pl.'s Opp. at 19), the Supreme Court has made clear that federal laws mandating state actors' provision of "information that belongs to the State and is available to them *only in their official capacity*" run afoul of the Tenth Amendment. *Printz v. United States*, 521 U.S. 898, 932 n.17 (1997) (emphasis added). In the absence of any federal laws mandating disclosure or cooperation, state rules like Executive Order 170 which concern how state employees may communicate with federal officials about the personal information of residents do not conflict with—and are not preempted by—any federal scheme.

## II.    PLAINTIFF'S INTERGOVERMENTAL IMMUNITY CLAIM FAILS

The intergovernmental immunity doctrine is derived from the system of dual sovereigns created by the Constitution, under which each sovereign is "protected from incursion by the other."

---

[4] In *State of New York*, the Second Circuit held that § 1373 was constitutionally applied as a condition on the receipt of certain federal funds. 951 F.3d at 114. And in *City of New York*, the Second Circuit upheld § 1373 against a facial Tenth Amendment attack. 179 F.3d at 35. In rejecting the facial challenge to § 1373, the *City of New York* panel relied on the perceived distinction "between invalid federal measures that seek to impress state and local governments into the administration of federal programs and valid federal measures that prohibit states from compelling passive resistance to particular federal programs." 179 F.3d at 35. The Supreme Court has since rejected this distinction relied on by *City of New York* as inconsistent with Tenth Amendment principles. *See Murphy v. National Collegiate Athletic Ass'n*, 584 U.S. 453, 474-75 (2018).

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (Kennedy, J., concurring). Because nothing in the doctrine overrides the State's Tenth Amendment right to decline to use its resources to further federal objectives, plaintiff's intergovernmental immunity claims must fail.

Insofar as the challenged laws and executive orders can be read to restrict certain federal activities in state courthouses and facilities, or to treat the federal government differently, it does so only as part of implementing the State's permissible choice not to participate in federal civil immigration enforcement. *See Raoul v. McHenry County*, 44 F.4th 581, 594 n.7 (7th Cir. 2022); *United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019). Here, the only alleged "burden" resulting from the challenged laws and executive orders is that federal immigration officials will have to expend more effort to conduct their civil immigration enforcement activities than they would have to if they had free rein over state courts, facilities, and officials. *See* Def.'s Mem. at 23; *California*, 921 F.3d at 890 ("Federal schemes are inevitably frustrated when states opt not to participate in federal programs or enforcement efforts."). Unlike the cases relied on by plaintiff in its opposition, POCA and the executive orders leave ample options for federal officials to conduct their enforcement activities across the State, outside of protected places where those activities do not pose direct harms to the State's core sovereign interests. *See* Def.'s Mem. at 22; *cf. CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 319-20 (3d Cir. 2025) (invalidating state law barring contracts for immigration detention where law foreclosed ICE's ability to detain persons).

Fundamentally, plaintiff cannot dispute that New York has the power to decline to assist in the federal government's civil immigration enforcement regime. But plaintiff nonetheless contends the challenged state laws and executive orders are impermissible because they purportedly go beyond not assisting and constitute "active thwarting" of immigration enforcement. Pl.'s Opp. 17-18. The Court should reject this false narrative. *See City of Chicago v. Sessions*, 888

F.3d 272, 282 (7th Cir. 2018), *vacated in part on other grounds*, 2018 WL 4268817 (7th Cir. June 4, 2018) (rejecting similar "affirmative interference" argument about local policies that prohibited use of state facilities for immigration activities and sharing of information).

Plaintiff's conclusory recharacterizations aside, its opposition makes no attempt to dispute the obvious and practical implications of its intergovernmental immunity (and preemption) claims: that a federal statutory scheme can be construed to confer upon the federal government the power to conscript state officials and resources in a way that *Printz* repudiated. Invalidating the State's protections against disruptive and chilling civil immigration arrests of residents participating in state court proceedings and accessing state facilities for state services would mean that "state participation in [immigration enforcement] efforts would no longer be voluntary." *United States v. New Jersey*, No. 20-cv-1364, 2021 WL 252270, *13 (D.N.J. Jan. 26, 2021); s*ee* Def.'s Mem. at 24-25. Where, as here, the Tenth Amendment permits the State to decline to assist with federal immigration efforts, the State's determination that the State's interests are best served by not permitting its resources to be conscripted for federal immigration enforcement cannot be invalidated merely by recasting that otherwise permissible choice under the intergovernmental immunity lens. *See, e.g. United States v. Illinois*, __ F. Supp. 3d __, 2025 WL 2098688, *27 (N.D. Ill. July 25, 2025) (invaliding state policies reflecting Illinois's "decision to not participate in enforcing civil immigration law" under intergovernmental immunity "would provide an end-run around the Tenth Amendment"). To hold to the contrary would improperly elevate the concerns of the federal sovereign over that of the State and deprive New York of its essential ability to protect its sovereign interests in the face of undue federal interference.

## CONCLUSION

The Court should dismiss the complaint in its entirety.

Dated:    New York, New York
          October 3, 2025

                                   Respectfully submitted,

                                   LETITIA JAMES
                                    *New York State Attorney General*
                                   Attorney for Defendants


                         By:    /s/ Linda Fang
                                Linda Fang
                                Special Litigation Counsel
                                28 Liberty Street
                                New York, New York 10005
                                (212) 416-8580

11